## FRANCIS OLIVER *vs.* DANIEL PITMAN.

A petition to the board of aldermen of a city by the owner of a tract of land therein on which he has laid out and named a court with house lots on each side, setting forth what he has done and asking " to have the said name of said court recognized and duly recorded by the proper authority and hereafter known as such," and their order thereon that the court " be called " by the name prayed for, " the same being private property," do not establish the court as a public way, nor estop him from conveying with one of the lots a portion of the court without reserving a right of way over such portion for his subsequent grantees of the other lots.

The owner of a tract of land laid out a private court thereon with house lots on each side, and conveyed one to K. with the part of the court in front of it, and afterwards another to P. with a right of way through the court. *Held*, that P. took no right of way through the part of the court conveyed to K., although K.'s deed provided that it should " remain open forever for the benefit of light and air to the other estates bounding on said court; " and that it was immaterial that such part was once repaired at the joint expense of P. and K. and the other abutters on the court, and that the drain from P.'s lot connects underground, within it, with a drain laid through the centre of the court.

The owner of a tract of land on which he had laid out a private court with house lots on each side conveyed one of them to M. with a right of way over the whole length of the court; and afterwards to K. another lot together with a part of the court, without reserving any right of way to the abutters on the court; and then to P. a third lot. *Held*, that P., being a stranger to the deed to M., could not under or by virtue of it maintain a right of way over the part of the court conveyed to K.

If the owner of a lot of land bounded westerly on a public street out of which opens a private court, and southerly, in front, on this court, and, in the rear, on the lot of a neighbor, can pass from any part of his lot through his own tenement into the street, and from the rear of his lot over his own open land into the court and thence into the street, he has no right of way of necessity over the neighbor's lot into the court, however convenient or useful it might be to him.

TORT for obstructing the plaintiff's alleged right of way by building a fence across Foster Place in Boston. The defendant, among other defences, justified under his deed.

At the trial in the superior court, before *Brigham*, J., it appeared that in 1823 Henry J. Oliver owned a tract of land in Boston and laid out and named Foster Place thereon with house lots on each side, and in 1829 sent a petition to the board of aldermen setting forth what he had done and asking " to have the said name of said place recognized and duly recorded by the proper authority and hereafter known as such," on which petition it was ordered that the place " be called Foster Place, the same

being private property." The place was seventy feet deep, opening easterly from Foster Street, (a public highway, the course of which was substantially north and south,) and running back to a lane which led into Charter Street.

In 1823, after laying out the place, Oliver conveyed the lot on the southwestern corner of it, abutting westerly on Foster Street, and northerly forty-two feet on Foster Place, to one Thomas Manley, describing the northern boundary as on a way. In 1831, Oliver conveyed the lot adjoining easterly to John Knowlton, through whom, by mesne conveyances, the defendant derived his title; and the land conveyed by this deed was bounded therein as " beginning on Foster Place so called," and measuring northerly " on land of said Oliver twenty-eight feet," to the lane leading into Charter Street, and finally, as its western boundary, following the division line between the granted premises and Manley's estate " and across said Foster Place " to the point of beginning, " said Foster Place to be always kept clear and unincumbered, and said piece of land now constituting a part of Foster Place in front of the tenements embraced in the aforedescribed boundaries is never to be built upon, but is to remain open forever for the benefit of light and air to the other estates bounding on said Foster Place, and said Knowlton is to pay from time to time his proportion of keeping said Foster Place in good repair, and never to have any communication between said Foster Place and aforesaid alley leading into Charter Street."

In 1833 Oliver conveyed the lot running the whole length of the northerly side of the place, and bounded westerly on Foster Street, to John Punchard, through whom, by mesne conveyances, the plaintiff derived title; and the land conveyed by this deed .was therein bounded southerly " by said Foster Place and by land opposite houses sold by said Oliver to John Knowlton, there measuring seventy feet," " with a right of way over said Foster Place to Foster Street," " it being also understood that said Foster Place is always to remain open as it now is; " and in this deed the place was described further as " an avenue re-corded in the city records as Foster Place."

Oliver, previously to his deed to Knowlton in 1831, had built on the lot which he thus conveyed to Punchard a house with an ell, leaving an open yard; and on the Knowlton lot two houses, or a double tenement; substantially as represented in the following diagram:

It further appeared in evidence that in 1835 a strip of lanu about eight feet wide, at the end of the place, was inclosed with a low fence, for a flower garden, by the then occupant of the Knowlton lot, and that there was never any controversy as to this fence or this use of the inclosure; that in 1849 a fence two feet high with a gate therein was built across the place on the western line of the lot, marked by the dotted line on the foregoing diagram; that this was removed at or about the time of a sale of the lot by auction in 1859; and that, in 1862, the estate having then been conveyed to the defendant, he built across the place on the same line a high and close fence, which soon afterwards was forcibly removed, whereupon he rebuilt it. It also appeared that the house on the plaintiff's lot was and always had been so situated that the occupant could obtain access from the back of it over his own open land to the open part of the place.

The plaintiff offered in evidence the declaration of the auctioneer and of the owner of the Knowlton lot in 1859, at the time of the sale by auction in that year, that the fence above mentioned as built across the place in 1849 had no right there, but the judge excluded it, and excluded also evidence offered by

Oliver *v.* Pitman.

the plaintiff that Foster Place had always been repaired through-out its whole length at the joint expense of the various abuttors, and that, since the defendant acquired his title, the place was once planked from Foster Street to the inclosure used as a flower garden, at the joint expense of the plaintiff, the defendant, and the owners of the Manley lot, and that the drain from the plaintiff's lot connected underground within the line of the defendant's lot with a drain which was laid through the centre of the place. The judge further excluded evidence by which the plaintiff proposed to show that a right of way over that part of the place within the defendant's boundaries was " convenient, useful and necessary to the proper enjoyment of the plaintiff's estate."

Certain special issues were framed and submitted to the jury, by whose verdict thereon it appeared that no right of way to the Punchard lot over the Knowlton lot had ever been acquired by adverse use ; and the judge then ruled that " no right of way over that portion of Foster Place within the line of the defend-ant's estate passed to John Punchard by Henry J. Oliver's deed to him in 1833, or otherwise, or was annexed as appurtenant to his estate ; that said Oliver and those claiming under him, and this defendant, would not be estopped to deny the existence of the court to the extent of their estate ; and that the plaintiff could not maintain his action ; " and directed a verdict for the defendant. The plaintiff alleged exceptions.

*I. Knowles, Jr.,* for the plaintiff.

*J. Lathrop & C. H. Fiske,* for the defendant.

CHAPMAN, J. The petition of Henry J. Oliver, and the order of the board of aldermen thereon, in 1829, do not purport to lc more than establish the name of Foster Place. The terms of the order do not establish it as a street or way, and the plain-tiff cannot claim a right of way under it. Nor can he claim any-thing under the deed to Manley in 1823 ; for he is a stranger to the title thereby created. At the time of Oliver's conveyance to Knowlton, in 1836, he owned the plaintiff's lot, the defendant's lot, and the whole of Foster Place from Foster Street to the lane eading to Charter Street, excepting such rights of way and

drainage as he had conveyed to Manley. The defendant is the grantee of what was conveyed to Knowlton. It includes not only the defendant's tenements, but all that part of Foster Place which then lay in front of the tenements; and contains the following restriction and reservation : " and said piece of land now constituting a part of Foster Place in front of the tenements embraced in the aforedescribed boundaries, is never to be built upon, but is to remain open forever for the benefit of light and air to the other estates bounding on said Foster Place, and said Knowlton is to pay from time to time his proportion of keeping said Foster Place in good repair, and never to have any communication between said Foster Place and aforesaid alley leading into Charter Street." This language does not reserve a right of way to Oliver over that part of Foster Place which he conveyed to Knowlton, but merely the benefit of light and air.

The plaintiff's counsel contends that evidence ought to have been admitted to prove that a right of way to and from his estate over that part of the court within the line of the defendant's premises was convenient, useful and necessary to the proper enjoyment of the plaintiff's estate. But mere convenience and usefulness are not sufficient to establish a way of necessity. In order to establish an implied reservation of such a way there must be, at the time of the grant, a reasonable necesssity for its existence. *Pettingill* v. *Porter*, 8 Allen, 1. *Parker* v. *Bennett*, 11 Allen, 388. *Nichols* v. *Luce*, 24 Pick. 103. *Brigham* v. *Smith*, 4 Gray, 297. *Leonard* v. *Leonard*, 2. Allen, 543. In *Gayetty* v. *Bethune*, 14 Mass. 55, it was held that a way of necessity exists only when the person claiming it has no other means of passing from his estate to the public street. But, if we should not hold so strict a rule as this, still it is apparent that the plaintiff has no necessity for a way over the land in front of the defendant's tenement, for his lot is bounded by Foster Street in front and on the open part of Foster Place on one side; and from the back part of his house he can pass to Foster Place on his own open lot. This has been its condition ever since the conveyance from Oliver to Knowlton. The relative rights of the parties were established by that deed, and

when Oliver afterwards, in 1833, conveyed the plaintiff's lot to Punchard, he could not convey any rights which he had previously granted to Knowlton. And, as he bounded the premises conveyed to Punchard on Knowlton, the right of way granted on Foster Place may be construed consistently with the rights of Knowlton, by limiting it to that part of the place which lay between Knowlton's lot and Foster Street.

By the finding of the jury it appears that no right of way has been acquired to the plaintiff's estate by adverse use since the conveyance to Knowlton. The parties must therefore claim under these grants, namely : the defendant under the deed to Knowlton, and the plaintiff under the deed to Punchard. The parol evidence offered cannot affect the construction of those deeds.                                   *Exceptions overruled.*