## PRESCRIPTIVE RIGHT TO THE USE OF A WAY.

Common Pleas Court of Franklin County.

### EVA A. FITZGERALD v. EDWARD G. BRENAMAN.

Decided, 1915.

*Easement—Right-of-Way Claimed by Prescription—Upon What an Easement Based upon Prescription Rests—Trespass May Ripen into Title by Prescription—Presumption as to Knowledge by the Owner of Use—Prescriptive Right Distinguished from a Right Resting upon Uninterrupted Use—Injunction.*

1. An easement by right of prescription rests upon a use and enjoyment, inconsistent with, and in derogation of an exercise of absolute dominion and control by the owner of the fee. To assert a right by prescription is to make a claim of defensive right rather than one of ownership.

2. A trespass if persisted in by an open, notorious, uninterrupted, adverse use, under a claim of right for the statutory period will ripen into title by prescription.

3. A presumption of law arises that an owner having either actual knowledge of a use, or who has constructive knowledge from open, visible use, and allows it to continue without let or hindrance for the statutory period of time, confers a right on the possessor or

user to the extent of his use, which can not be overcome by proof of no grant.

4. There is a distinction between a prescriptive right arising from adverse use of an easement, and a use springing from uninterrupted, continuous use of land. A right-of-way by prescription rests upon uninterrupted use for twenty-one years by analogy to the statute of limitations, and not upon the fiction of a grant.

5. Where a right-of-way over a servient estate is open and visible to the owner thereof, so that under all the facts and circumstances its continuous use may become known to the owner, constructive notice and knowledge is then chargeable to him.

6. So where an existing right-of-way over the lands of a grantor is yielded in consideration of an oral grant by the grantee of another right-of-way over the land of the latter, and such substituted right-of-way is used openly continuously without let or hindrance by all owners in succession for twenty-one years, a prescriptive right of title arises. Use of such right-of-way in such manner and in such way as to constructively disclose to the owner that it was used as a matter of right, for a period of twenty-one years beyond the time it was used and enjoyed under the privilege of the original grantee, charges the servient owner with knowledge of the adverse use and gives rise to a prescriptive right and title.

*J. D. Karns*, for plantiff.
*M. E. Thrailkill*, for defendant.

KINKEAD, J.

Plaintiff as an owner of a farm, claims a right-of-way by prescription over a farm owned by defendant, and seeks to restrain the latter from interference therewith. Plaintiff owns two tracts which are located off from the public highways. She has one outlet by means of a ford across a creek to Central College. During certain seasons of the year this is difficult of passage. When the stream is up it is well nigh impossible, if not altogether so; it is also difficult of passage by heavily loaded wagons on account of large boulders in the bed of the stream. During certain seasons the evidence discloses that threshing machines, wagons loaded with hay and other farm products could not be taken out across the creek, but always had to go out through the right-of-way in controversy.

Mr. Geigele, prior to 1883, was the owner of the two tracts now owned by plaintiff, as well as of another tract adjacent

thereto, consisting of 57 acres, which fronted on the Granville road at the south end of it. Mr. Geigele, and previous owners thereof, had a right-of-way to the Granville road along the east side of the 57 acre tract. W. A. Dill owned a 200 acre farm lying immediately east of the 57 acre tract which also fronted on Granville road. On April 17, 1882, Dill purchased from Geigele the 57 acre tract. As part consideration they made an oral agreement contemporaneous with the grant, that Geigele should abandon the right-of-way along the east side of the 57 acre tract leading to, the Granville road, and in lieu thereof Dill agreed to grant Geigele a right-of-way from the 20 acre tract of the latter out through the 200 acre tract of Dill connecting up with a lane on the latter land leading out to the Granville road. This new way was opened up and was used by Geigele and his tenants from April, 1882, to May 7, 1888, when Green became the purchaser. Dill executed a mortgage to Dr. C. G. Green August 21, 1884, which contained no mention or reservation of the right-of-way orally granted by Dill to Geigele. The mortgage was foreclosed and Green became the purchaser May 7, 1888, at a judicial sale.

The evidence is clear and convincing that the right-of-way over the Dill-Green property was openly and continuously used by all owners and occupiers of the "Geigele tract," the 57 and 20 acre tract from 1882, the time of the oral or implied grant, and from May 7, 1888, when Green became the purchaser without let or hindrance, up until Brenaman, the present owner, came into possession, which was September 17, 1913. Brenaman was made acquainted with the claim of right asserted by plaintiff by direct communication by her to him before he took title. He is not therefore an innocent purchaser, but evidently bought in reliance upon the warranty. Dr. Green sold the "Dill 200 acre tract" to the Abernathys on December 23, 1910, giving them a warranty deed. The Abernathys conveyed the property by deed of general warranty to Brenaman. So the legal responsibility arising out of the claim to the right-of-way asserted by plaintiff rests upon Green.

Dr. Green was not a resident of this county during any period of his ownership, but resided in Woodbury, N. J., during

all the time. The Geigele tract was owned by Roberts Brothers before the plaintiff became the owner on August 24, 1908.

The evidence is clear and convincing that the right-of-way was a clear and definite course from the beginning to the present time; that there was at no time no material deviation therefrom except slight departures at times to avoid fallen trees or mud-holes. The evidence is clear that the road was repaired at times by the users thereof, by puttng in and repairing a small bridge, and by making other repairs. The mail box of the occupiers was kept down at the entry to the lane in the Dill-Green tract at the Granville road.

There was evidence offered by defendant of other roads on the Green farm used by others and for other purposes, and tending to show that the land was overrun by people in general. But this in no wise destroys the effect of the evidence offered on behalf of plaintiff. The evidence shows that the road was openly and continuously used by all the owners and occupiers of the Geigele tract without let or hindrance for a period of 21 years from the time Green became the owner, May 7, 1888, up to the time Abernathy Brothers became the owners on December 23, 1910, as well as up to the date when Abernathy Brothers conveyed to Brenaman, September 17, 1913, a period of twenty-five years.

I say it was used during that period without let or hindrance To be specific, neither Green nor any of his agents, nor the Abernathy Brothers granted permission to use the road or made any objection to its use.

The user was by Geigele and his heirs, and the subsequent grantees. The heirs of Geigele conveyed to Leon Smith January 22, 1906, who conveyed to Mathew S. and B. M. Roberts January 27, 1906. The Roberts Brothers conveyed to plaintiff August 24, 1908. The evidence shows that each and all of the above owners and occupants used the road without let or hindrance up until Brenaman became the owner September 17, 1913, who undertook to stop the use, and this action was brought October 1, 1913.

It was sought to be shown in evidence that the owners and representatives of the Green tract had personal knowledge of

the use of the road, and made no objections.  Dr. Green visited
the farm only once or twice and did not disclose actual knowl-
edge of the use.  He had as agents Mr. Huffman, Mr. Burdell,
and Mr. Thrailkill.  Mr. J. B. McDonald testified, without ob-
jection, that he acted as agent in 1898 and for four years there-
after; that he put up fences, and had knowledge of the right-
of-way and its use while owned by Geigele.  Mr. Green testifies
that if he acted as such agent it was under authority given by
his agent.  Green does not deny his agency as claimed by
counsel.

Mr. Thrailkill became agent for Green in 1901 or 1902.  The
evidence shows that he was perfectly familiar with the lay of
the Geigele tract and the Green farm; that he knew of the road-
way, but he would not admit that he had personal knowledge
of the use of the road by the occupiers of the Geigele tracts.
He was on the farm many times, hunted on it, picked black-
berries, knew who occupied the Geigele tract, and the right-of-
way was perfectly open and visible to him, and actual knowledge
of the use was clearly accessible but he would not admit the
user.  He was legal counsel for Dr. Green and looked after
the conveyance to the Abernathy Brothers.  The subject of the
legal right to use the right-of-way in controversy was considered
by him when the sale was made to Abernathys, and Mr. Thrail-
kill stated that Green would give them a warranty deed.  This
implies knowledge of a user of the road.  The facts and circum-
stances known by him as agent for Green required and de-
manded inquiry and consideration by him, and it became the
duty also of the Abernathys to investigate the facts.  They went
over the farm, became personally advised as to the roadway,
visited the plaintiff and stayed all night at her house, and then
took the conveyance with this knowledge, and never made any
objection.  The right to use the road was asserted by plaintiff
direct to Abernathy Brothers, but still they made no objection
or hindrance.  They had knowledge of repairs of the road, and
of the building of a new bridge by plaintiff at the Granville
road following a flood.  They had knowledge of the location of
plaintiff's mail box at the Granville road, but offered no objec-
tions, and made no hindrance.

But the law does not require that a user under claim of right shall personally assert his claim to the owner of the servient estate. Nor does it require that the owner shall be made specifically acquainted with the nature and extent of the claim of right. In other words, it is not necessary to show actual knowledge of the claim of right. Constructive knowledge may be sufficient; that is if the use is open, continuous, and under such circumstances and conditions that it may be plainly visible to the owner of the servient estate, then the law will attribute knowledge to him.

It is to be presumed that an owner of real estate shall always be mindful of his own rights; that he shall always be on guard to learn and know of any infringement upon his rights, or any improper use of, or trespass upon his property. If he does not; if, without express consent, with knowledge, actual or constructive, he permits another to use his land without let or hindrance, for such length of time that the law will presume a grant, he can not be held to complain. Nor can he complain if a mistake is made concerning his legal rights touching the legal aspect of a use of which he has actual or constructive knowledge. This is the hard and fast rule of the law. There is apparent difficulty concerning the subject of "adverse possession." A general notion prevails that to constitute adverse possession, actual knowledge of the claim of the user must be brought home to the owner of the servient estate. But such a view can not obtain if careful study of the question and discrimination is exercised.

It is probably not as true now, as when an English judge stated years ago that:

"The doctrine of adverse possession, until very lately, constituted and perhaps still constitutes one of the least settled, although most important heads of the English law." Smith's Leading Cases Notes to *Taylor* v. *Horde*, 1 Burr, 60, quoted 60 O. S., 83.

A careful reading of the many decisions in this country will disclose a lack of appreciation of the law, as well as want of precise knowledge of the legal rules concerning this important

topic of the law. The suggestion of Lord Mansfield of long ago, is pertinent to the discussion, to the effect that "the more we read, unless we are very careful to distinguish, the more we shall be confounded." Quoted in 60 O. S., 83. But there is no difficulty or confusion concerning the rule of law touching this subject in Ohio. It is clearly and concisely settled in *Pavey* v. *Vance*, 56 O. S., 162. The essential elements of title by prescription are so well set forth in this decision, and are so conclusive of the questions of the present case, that we might well be content with resting our conclusion upon this case without further elucidation. This case properly understood and applied ought to clarify the mind, and dispel the confusion.

There is no trouble in distinguishing between a license and an easement. The former is a personal privilege by parol or in writing not in conformity to the statute of frauds, while an easement is an incident of a grant; it presupposes a grant, and is implied therefrom. Under certain circumstances it is to be implied that the grant would not have been made unless it was intended to likewise grant the right or easement the enjoyment of which is essential or necessary to the use or grant.

The easement may be implied in favor of either the grantor or grantee according to the character or nature of use to be impliedly granted. When it is implied in favor of the grantee it is presumed to have been the intent of the grant that such grantee was to exercise an easement essential to full enjoyment of the subject of the grant. When the easement is in favor of the grantor it is to be presumed that he would not have made the grant, unless it was intended that the right or use was to have been reserved in him, and was essential to full enjoyment of his own property or that which he retained.

But an easement may arise or be presumed without an express grant. It may arise by prescription or presumption of fictitious grant, from long continued possession by analogy to the statute of limitation.

As stated, the general conception of an easement is that it is appurtenant to a grant, arising by implication and because the privilege or right is essential to full enjoyment of property granted, embracing only such rights as may be directly neces-

sary to the proper enjoyment of lands. *Ogden* v. *Jennings*, 62 N. Y., 526.

An easement by right of prescription rests upon a use and enjoyment which is inconsistent with, and in derogation of an exercise of absolute dominion and control by one claiming as owner. To assert a right by prescription is to make a claim of defensive right rather than one of ownership. A trespass if persisted in by an open, notorious, uninterrupted, adverse use, under a claim of right for the statutory period will ripen into title by prescription. A presumption of law arises that an owner who has either actual knowledge of a use, or who is held to have constructive knowledge from an open, visible use, and allows it to continue without let or hindrance for the statutory period of time, confers a right on the possessor or user to the extent of his use. Such right may not be overcome by proof of no grant. He may contradict it only by explaining the facts, but he may not overcome it by denial. 14 Cyc., 1147; *Sibley* v. *Ellis*, 11 Gray, 47; *Barnes* v. *Haines*, 13 Gray. Roads by prescription rest upon uninterrupted adverse user for 21 years in analogy to the statute of limitations, and not upon the fiction of a grant. *In re Krievers Private Road*, 73 Pa. St., 109.

There is a marked distinction between the uninterrupted, continuous use and possession of land—the physical property—where title is claimed, and the adverse use of an easement. The presumption arising from the uninterrupted use of a right-of-way is quite unlike a claim of title to land by adverse possession. Where land is physically held, possessed and occupied, to the exclusion of the owner long enough to give title by prescription, the owner is disseized and the title becomes complete in the adverse possessor. A mere verbal protest against the occupancy without an actual entry, or by action brought, is without avail, because the owner in such case is still disseized.

In the case of an easement, however, the adverse use thereof rests upon a different basis entirely. The owner of the premises on which the easement is claimed remains in possession of the physical thing—the land, while his acquiescence in the adverse use of the right-of-way, or the use "without let or hindrance," irregardless of a grant—in fact without one—ripens into a title ·

by prescription.  14 Cyc., 1147; *Powell* v. *Bagg*, 8 Gray, 441; 69 Am. Dec., 262.

The maxim laying at the foundation of the rule had its origin in the civil law and was found in Bracton lib. 2, C. 23, Sec. 1:

"An easement in the land of another can be acquired by adverse user only, with the acquiescence of the owner of the land in its exercise under a claim of right *per patientium veri domini, cui scivit et non prohibuit, sed permisit de consensu tacito.*" *Powell* v. *Bagg, supra.*

If, before the lapse of time, the owner of the land, by verbal act resists the exercise of the right, and denies its existence, the presumption of the grant is rebutted, and his acquiescence in the right claimed is disproved.

Keeping in mind the pointed distinction between title to land by prescription, and easements by prescription, the constituent elements or fundamentals of title by adverse possession will be considered.

This can best be done by a careful study and analysis of *Pavey* v. *Vance*, 56 O. S., 162, which is the rule of property in this state.

The following essentials are drawn from this decision:

1.  Prescription by civil law was not regarded so much as a source of title, as it was as a means of defense.

2.  The substance of the title is the use and enjoyment of the easement for the requisite period.

3.  There must be proof that the use was adverse to the owner of the land.

4.  It must be used under a claim of right.

5.  It must cover the period of time specified by the statute.

6.  An adverse use is not consistent with possession under a license or permission.  It must be without let or hindrance.

7.  The use made and the mode of enjoyment determines the right.

8.  It is not necessary that the party using the way verbally assert the right to do so, or bring to the actual knowledge of the owner of the servient estate his claim of right.

9.  A use of a right-of-way over the farm of another "when it prevents the owner from cultivating it, or from making any

use of it inconsistent with the right-of-way, is adverse."

10.   A use is "under a claim of right," where it is "used without 'let or hindrance' and without asking leave." "This may appear from conduct as well as words; using a way without asking leave imports a claim of right to do so."

11.   "It is a general rule that the enjoyment of one's own land through that of another, without let or hindrance, for twenty-five years" confers upon the user "a right by prescription to continue the use as an incident to his own land, and which will pass by conveyance."

The doctrine and rules of the *Pavey* v. *Vance* decision above set forth are clearly applicable to this case and must be controlling in this case.

The important essential in this case, not conceived by counsel, is that where a right-of-way over a servient estate is open and visible to the owner thereof, so that by reason of all the facts and circumstances it may become readily known to the owner that the road was used, and by whom, and under what necessity it was used, constructive notice and knowledge is then chargeable to such owner.   If the existence of the easement is apparent or discoverable upon examination this is equivalent to actual notice (*Willoughby* v. *Brown*, 226 Ill., 590; 117 Am. St., 213). This road or right-of-way was apparent to and readily discoverable by the owners of the Green farm.

"A party assuming and exercising a right of way openly, notoriously and continuously, without asking the consent of the owner of the land, and without manifesting in any way that he is exercising the right as a favor or license given him by the owner of the soil, must be considered as holding adversely." *Chollar-P. Mining Co.* v. *Kennedy,* 3 Nev., 361; 93 Am. Dec., 409.

"If the user of a right-of-way is of such nature and takes place at such intervals as to afford an indication to the owner of the servient tenement that a right is claimed against him, it will be sufficient.   The use of such way whenever one sees fit and without asking leave is deemed continuous and adverse." 14 Cyc., 1156.

The facts in this case come clearly within the rules stated in the last two above named authorities.   The persons using

the road from the time Green became the owner did not in any wise manifest that the owners of the dominant estate were using it as a favor or license. It was used at such intervals as to afford an indication that it was used as a matter of right.

Without regard to the fact that there was either a reservation or an oral grant at the beginning of the user, the fact is that there was a user for twenty-one years from the time Green became the owner for the prescription period.

Geigele said: "I will not sell the 57 acre tract without reserving the right-of-way existing thereon." Dill said: "I will not buy it that way, but I will give you a right over my farm instead."

If the way which Geigele had over his 57 acre tract was a way of necessity, it is to be implied that he would not make the grant without reserving a right-of-way, either the one he had, or a substituted one. If the right-of-way and its user was readily apparent to any one becoming an owner of the Dill property, who must be constructively charged with notice and knowledge of the way, and of the necessity thereof to the owner of the Geigele-Fitzgerald tract, he is chargeable therewith.

Where a way is one of necessity this fact constitutes notice to a purchaser of the existence of the easement (*Ellis* v. *Bassett*, 128 Ind., 118; 25 Am. St., 421). An existing way is part of the realty, and passes by a conveyance (64 N. H., 500; 88 Ky., 185; 82 Me., 438). Where an owner of an estate imposes upon it an apparent and obvious servitude in favor of another, and at the time of the severance of ownership such servitude is in use, and is reasonably necessary for the fair enjoyment of the other, then whether the severance is by voluntary alienation or by judicial proceedings, the use is continued by operation of law. *Ellis* v. *Bassett*, 128 Ind., 421; 25 Am. St., 421.

I am inclined to the opinion that the right-of-way which Geigele had through the 57 acre tract to the Granville road was a road of necessity.

A way of necessity has been held not to mean that there must exist an absolute physical impossibility of having an outlet in another manner. Where a way exists, but can not be utilized at all times and under all conditions and circumstances

without unreasonable labor and expense, an easement is sometimes recognized. *Smith* v. *Griffin*, 14 Colo., 429; *Pettingill* v. *Porter*, 8 Allen, 6; 85 Am. Dec., 676; *Galloway* v. *Bonesteell*, 65 Wis., 79; 56 Am. Rep., 616; see note to Am. Ann. Cas. 1913 C., p. 1114. See note 36 Am. St., 416; 134 Am. St., 735.

There is sharp difference of opinion concerning the creation of an easement by necessity as to the degree thereof. A glance at the note to *Powers* v. *Hefferman*, 122 Am. St., 206, on page 211, will disclose that many decisions hold that a strict necessity is essential to give rise to any easement by necessity. It there also appears that some authorities regard a reasonable necessity as a sufficient basis for a way of necessity, citing *Oliver* v. *Pitman*, 98 Mass., 46; *Hollenbeck* v. *McDonald*, 112 Mass., 247; *Goodall* v. *Godfrey*, 53 Vt., 219; 38 Am. Rep., 671. See also instructive case and note *Blossmeyer* v. *Jablonsky*, 241 Mo., 681; Ann. Cas. 1913 C., p. 1104.

A mere convenience, however great, it is urged in the greater number of cases, is not enough; it is necessity, not inconvenience, that gives the way. See note to 85 Am. Dec., 676, also note to 122 Am. St., 211. If one has an outlet over his own land, although less convenient, he can not claim a right over the premises of another (74 Ala., 374; 62 Md., 462; 73 Vt., 375). If he can construct a road over his own land with reasonable expense a way of necessity can not ordinarily be implied. In short, it is said, ways of necessity do not exist when there are reasonably practicable ways of ingress and egress. Note to 122 Am. St., 211, and cases cited. It appears that a permanent way at all seasons of the year and for all purposes in the reasonable enjoyment of the farm may not be constructed without unreasonable expense.

The rule of *reasonable necessity* as the basis of implied right to an easement is the one adopted in this state in *Baker* v. *Rice*, 56 O. S., 463; *Meek* v. *Breckenridge*, 29 O. S., 642; *Meredith* v. *Frank*, 56 O. S., 479; *Jordan* v. *Breece Mfg. Co.*, 89 O. S., 311.

If at the time of the grant by Geigele to Dill there was a reasonable necessity for a right-of-way to the Granville road, because it was well nigh impossible to pass out over the ford in the creek at certain seasons and with certain kinds of loads,

threshing machines and the like, then it may well be concluded that the "agreement to exchange the passage way * * * for another * * * does not evidence a permissive use of the way, but is persuasive of an intention to surrender one in consideration of another way being granted." *Bright* v. *Dunn,* 12 Ky. L. Rep., 689.

Regarding the existing right-of-way as one of reasonable necessity which I believe to be warranted by the facts and circumstances and the law, as suggested by *Bright* v. *Dunn, supra,* it does not bring it under the doctrine of a license, but it may well be concluded that there was an intent on the part of both grantor and grantee that a like way of necessity was to be granted.

I have thus carefully considered this question because it was strongly urged upon the court and because it presents the question in a novel and unusual way, and might warrant the formulation of a new form of the rule if it be vital to the decision. It presents a strong equity, and adds material weight to the claim of right asserted by plaintiff.

An easement can not be created by parol. But when a right is given by parol agreement, as. it was in this case, which is exercised as aginst subsequent owners, under claim of right it becomes adverse. Such use of a right-of-way may ripen into a perfect title if it is exercised under a claim of right for the period prescribed by the statute of limitations. See *Stearns* v. *Janes,* 12 Allen, 582; *Barbor* v. *Pierce,* 42 Cal., 657; *McKenzie* v. *Elliott,* 134 Ill., 156.

The fact that a right asserted as an easement originated in parol permission, does not affect the prescription title, if it has been used for the requisite period under a claim of right. *Counton* v. *Seufert,* 23 Ore., 548.

In *Ashley* v. *Ashley,* 4 Gray, 197, it was held:

"Evidence that the grantee, at the time of receiving a deed of land, agreed by parol that the grantor might continue to exercise a right-of-way over the land, not reserved in the deed, is admissible for the purpose of showing that the grantor's subsequent possession of such easement for twenty years under a claim of right. (Syl.)

"The evidence had a tendency to show that the plaintiff used the way openly as of right, against the owner of the soil, and

so was adverse, and this was one of the elements for establishing the easement by prescription. This principle is, that possession under a claim of title, with or without deed, is adverse; and that principle applies as well in case of easements, etc., as to title in land." *Ashley* v. *Ashley,* 4 Gray, 197.

If the use of a way is under a parol consent given by the owner of the servient tenement to use it as if it were legally conveyed it is a use as of right (*Stearns* v. *Janes,* 12 Allen, 582). So an occupation of land under parol gift from the owner is an occupation as of right (*Sumner* v. *Stevens,* 6 Md., 337). The character of the use depends upon the language used and the manner of the enjoyment. If the language is such as to create only a license or lease, the enjoyment is regarded as permissive, and not as of right. *Cheever* v. *Pearson,* 16 Pick., 266.

The transaction between Geigele and Dill being more nearly like a reservation or implied grant of necessity, rather than a license, it may well furnish the basis of a claim of right, if not an implied grant because a reasonable necessity.

More than ordinary care and attention has been given this case because the question is important as a rule of property. I have merely followed the law as settled by the decision of last resort applicable to this case, and have endeavored to more fully elucidate and set forth the law of easements by prescription.

The finding and decree is in favor of the plaintiff, decreeing title by prescription in her to the right-of-way.