ALLEN H. GOSS *vs.* DANIEL CALHANE & another.
ANNIE F. CALHANE *vs.* ALLEN H. GOSS.

The owner of the fee of a way cannot close the way against those as to whom it is subjected to the servitude.

The owner of land who conveys a portion of it bounded upon "a private way which I lay down," can use the way for access to his remaining land; and having conveyed the land upon both sides of the way, can use it for access to his land at the end.

ACTIONS OF TORT. The first action was in the nature of trespass *quare clausum* against Daniel Calhane and Thomas R. Cook for entering the plaintiff's close and tearing down a building. Calhane answered that his wife was seised of a parcel of land adjoining the plaintiff's close, appurtenant to which was a right of way in a twelve foot passage way leading from her land across the plaintiff's close to Court Street; that the plaintiff obstructed this right of way by erecting a shed across it, and that he, by the authority of his wife, entered and removed the shed, which was the alleged trespass. The other defendant, relying upon the same facts, justified also under the authority of Mrs. Calhane.

The second action was in the nature of trespass upon the case for obstructing Mrs. Calhane's right of way by the erection of the shed upon the passage way.

The situation of the premises appears upon the following plan:

Way to Main Street.

Land of Calhane.

Bowling Alley.

Fence.

Carriage-house.

Shed.

House.

Main Street

Land of          Way in dispute.          Goss.

Court Street.

In the Superior Court, trial by jury was waived, and the cases were heard and determined by *Brigham*, C. J., who found the following facts:

Goss *v.* Calhane.

Goss proved a deed from George A. Green to himself, dated March 31, 1868. This deed conveyed the land designated upon the plan as "Land of Goss," in two parcels, one bounded "on said private way," the other "by said private way."

George A. Green had title to the estate by two distinct lir es of conveyance, namely:

The land on the western side of the way, was conveyed by James H. Duncan to Hiram Peaslee, by deed dated April 16, 1852, bounded "thence running southerly by a twelve feet private way which I lay down;" by said Peaslee to Charles H. Dunbar, by deed dated June 3, 1852; by said Dunbar to John P. Gilman and Rufus L. Chase, by deed dated July 28, 1860; by Gilman and Chase to Moses H. Green, by deed dated July 28, 1860; and by said Moses H. Green to George A. Green, by deed dated October 19, 1860.

The land on the eastern side of the way, and the land at the end of the way, was conveyed by James H. Duncan to Harriet Frye, wife of James S. Frye, by deed dated June 22, 1863, bounded "thence easterly by land of said Green and a private way twenty-nine feet to a stake," "thence northerly seventy and a half feet by a private way twelve feet wide to a stake," "together with a privilege of passing and repassing" "from Court Street to said land in the twelve feet private way mentioned." This conveyance included also the land now owned by the wife of Calhane. Harriet Frye and her husband conveyed the entire ot to John P. Gilman, by deed dated April 30, 1867, and Gil- man subsequently conveyed part of the premises to George A. Green, by deed dated March 31, 1868, the same day on which Green conveyed to the plaintiff.

It also appeared that Gilman subsequently conveyed the resi- due of what he had purchased of Mrs. Frye, to the defendant Calhane, by deed dated January 1, 1870, bounded "by said way," "with the privilege of passing and repassing in the pri- vate way from Main Street to the land described, and also from Court Street to said land in a twelve feet private way laid down by said Duncan.' December 1, 1870, Calhane conveyed the estate, so conveyed to him by Gilman, through a third party

to his wife. All the deeds mentioned the way and purported to convey rights of way in it.

The court found as a fact, that subsequent to his purchase, Goss erected on the easterly lot of land, on the southwesterly corner of the lot as shown on the plan, the building called on the plan, " a carriage-house." This building was erected in 1868, and in the fall of that year, he built a shed over the way in question, connecting the carriage-house with his dwelling-house, as shown on the plan. This shed was a substantial structure, about twelve feet high, supported by the adjoining buildings, and by posts which were supported upon timbers laid along on the ground by the sides of these buildings, and across the way at the rear of the shed. It was covered by mastic roofing, and was open on the side towards Court Street, except near the top, and was boarded at the back closely, from top to bottom.

In September, 1871, Calhane and Cook entered on the premises and demolished this structure.

At the time of the conveyance by Duncan to Frye, there was on the premises a fence extending from the place where the southwestern corner of the plaintiff's carriage-house now stands, in a westerly direction, across what is now claimed as a way to Court Street. This fence was an old fence, and had been there for many years, and was continued in that position, though more or less dilapidated, from that time until after the plaintiff purchased the estate, March 31, 1868. When Gilman owned both estates, on the easterly side of the way, he used the way to Court Street, as well as the way to Main Street; yet when he conveyed part of the estate to Green, there was a substantial fence, though in imperfect repair, erected on the place above described, practically obstructing any access from the residue of his estate to Court Street, and practically obstructing any access to Main Street from the parcel conveyed to Green.

When Duncan conveyed to Peaslee in 1852, the way in question was obstructed by a fence, in the place above described, and the way as actually laid out and used did not extend beyond this fence.

Evidence was introduced, however, tending to show that the fence was at one time attached to the end of the building, on the premises conveyed by Gilman to Calhane, and called the "bowling alley," and that the way was open to that point. And Mr. Frye testified, that while his wife owned the premises, he permitted the fence to be substantially removed by boys for the purpose of a bonfire, and that for sometime thereafter there was no fence across the "way."

Upon these facts and upon the deeds, the presiding judge ruled that Mrs. Calhane had no easement over the land and way from her premises to Court Street, and found for the plaintiff in the first action with damages in the sum of eighty-five dollars; and for the defendant in the second action.

The defendants in the first action and the plaintiff in the second alleged exceptions.

*C. J. Noyes*, for the Calhanes and for Cook.

*S. B. Ives, Jr.*, (*J. P. Jones* with him,) for Goss.

DEVENS, J. The decision of these cases depends upon the question whether Mrs. Calhane had a right of way in the passage upon which the shed was built. Both parties claimed the title to their premises from J. H. Duncan, who, in 1852, conveyed to one Peaslee a parcel of land by metes and bounds which apparently exclude the way, on the westerly side of which it is situate, by the words "thence running southerly by a twelve foot way which I lay down:" this parcel by mesne conveyances came to Goss, March 31, 1868, by deed of George A. Green. In 1863, Duncan conveyed to Frye, as one parcel, a tract situated upon the eastern side and end of the same way, the boundary of which is in part as follows: "thence easterly by land of said Green and a private way twenty-nine feet to a stake; . . . . thence northerly seventy and a half feet by a private way twelve feet wide to a stake," &c. An inspection of the plan shows these lines to be along the end and by the easterly side of said way. Frye afterwards conveyed this whole tract to Gilman, who divided it and conveyed to George A. Green, who, on March 31, 1868, conveyed to Goss, the portion of the tract which was on the eastern side of the way; so that Goss then owned the tracts

on either side of the way. Subsequently, on January 1, 1870 Gilman conveyed the remaining portion of the tract held by him which bounded upon the end of the way, to Daniel Calhane, by whom through a third party it was conveyed to his wife.

The claim of Goss is that by the conveyance to him of the parcels upon the eastern and western sides of the way he became owner in fee of the whole, and was thus entitled to obstruct, or to build upon it. All the deeds referred to purport to convey a privilege of passing and repassing in this way.

Assuming that the effect of the deeds, under which Goss claims, which bound the parcels of land owned by him upon the way, is to extend each parcel to the centre of the way, and thus give him the fee in the whole, it does not determine the case in his favor. So far as that portion of the tract conveyed to him is concerned which is described as a way, even if he has the title in fee therein, it is subject to all the servitudes properly imposed upon it. *Fox* v. *Union Sugar Refinery*, 109 Mass. 292. When therefore Goss's grantor was bounded by Duncan "upon the way I lay down," if it be considered as a conveyance *ad filum viæ*, the portion of the tract covered by the way was still subject to the uses for which it was thus laid down, and those must have included its use as a way to pass and repass to the various parcels which Duncan owned, and which abutted thereon. The fact that, in connection with the parcel conveyed, Duncan grants the privilege of passing and repassing in the twelve foot way, indicates clearly that the whole passage was to be kept open. It would not have been in the power of Goss, if he had owned one side only, to have closed that side of the way, and thus have narrowed his opposite neighbor down to the use of the half which was his side of the way. The ownership of the land upon both sides does not enable him to close it as against any other person having a lawful right to use it.

When by his deed to Frye, Duncan conveyed the parcel of land bounding upon the side and the end of the way, he conveyed the right to use the way either from its side or end; and when Frye's grantor divided the parcel and conveyed the tract upon the side and that upon the end by separate conveyances, even if

the latter was subsequent, the owner of the second tract was still entitled to this use.

Nor does the fact that the earlier deed conveyed the land to the centre of the way by warranty, raise any estoppel against the grantor under the subsequent conveyance, or prevent him from asserting this right, for such deed conveyed and warranted, so far as this portion is concerned, the fee in a private way only.

Even if in 1852, when Duncan conveyed to Peaslee, there was a fence across the end where now Calhane claims to enter, while this might indicate the limits of the way, yet, so far as Peaslee was concerned, it would not restrict Duncan's right to use it for the benefit of his own remaining land by entry thereon either from the end or side of it.

In 1863, Duncan conveyed by a deed bounding the land upon the end of the way. He thus conveyed a right in it. Even if after the division of the tract thus conveyed, Gilman for some few years ceased to use the way, having another access to Main Street, this non-user did not destroy the right which was appurtenant to the parcel then held by him and now held by Mrs. Calhane. *Hayford* v. *Spokesfield*, 100 Mass. 491. Nor is the fact important that in the division as made by Gilman, the parcel which has come to Goss is cut off from an access to the passage leading to Main Street, while the parcel held by Calhane has an access to both the ways the use of which appertained to the parcel conveyed by Duncan to Frye.

We are of opinion, therefore, that the ruling of the learned judge, upon the case as reported, that Mrs. Calhane had no such easement in the way from her premises to Court Street as would justify her in removing obstacles placed therein, was incorrect, and the                                      *Exceptions are sustained.*