## PHILIP LEFAVOUR vs. MARGARET McNULTY.

Essex.   January 13, 1893. — March 4, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Trespass — Private Way — Description in Deed.*

Three parcels of land, A, B, and C, belonging to different persons, were situated on a private way leading northerly to a highway. Lot A lay on the easterly side of the private way, between lot B and the highway; lot B was situated at the southerly end of the private way; and lot C was situated on the westerly side of the private way opposite to lot A. Subsequently the three lots were conveyed to one person, who continued to use the way in connection with lot B until his death. Afterward his heirs conveyed lot A to the plaintiff, the westerly boundary running "on a courtway"; lot B was conveyed to the defendant, the boundary line on one side running "to a way leading to Essex Street," and then running "by said way"; lot C was conveyed to a third person, the boundary line on the easterly side running "southerly on a courtway, . . . with all the rights in common on said court." *Held,* in an action of trespass brought by the owner of lot A against the owner of lot B, that, construing all the deeds together, it was the intention of the grantors that the way should continue to be used by all the grantees in common, and that the boundary line of the lot conveyed to the defendant operated to give him a right to use the way as appurtenant to his land.

TRESPASS *quare clausum,* for entering upon the plaintiff's premises, situated in Salem, on May 1, 1886, and tearing down and destroying a fence thereon. The case was submitted to the Superior Court, and, after judgment for the defendant, to this court, on appeal, on agreed facts, in substance as follows.

In 1669, the plaintiff's land, marked A, extending southerly from Main Street, now Essex Street, in Salem, as shown on the following plan, was owned by Henry Kemble; the defendant's land, a part of which is shown on the plan and marked B, was owned by Alexander Sears; the lot designated on the plan as the Advent Church lot, and certain lots southerly thereof not on the plan and known as the Lynde Schoolhouse and the Ward Estate lots, were owned by Francis Skerry; and the lots marked C and D belonged to Humphry Coombs; all of whom derived title, through mesne conveyances, from Richard Raymond, who originally owned the entire tract. In that year Sears, the owner of the land now belonging to the defendant, having died, his administratrix, by deed dated July

30, 1669, conveyed to Skerry an interest in a way as follows:
" An interest and propriety in a highway which I have reserved
for my own use which is part of that land belonging to my now
dwelling house to say ten foote broad and to run between the
house and the land of Humphry Coombs on the west and some
lately sold to Henry Kemble now in the possession of George
Thomas on the east from the highwaye or common on ye north to
run south toward the water side to ye orchard of ye said Francis
and to run sixty-nine half foot further along by ye side of ye
orchard on the east side." This way extended southerly from
Essex Street to a point somewhere opposite the building known
as the Lynde Schoolhouse, which was directly south of the
Advent Church, and since 1869 its location has remained un-
changed, it has been open and in use in connection with the
defendant's land and with the Advent Church, Lynde School,
and Ward lots. For more than forty years a fence has been
maintained across the way at the northerly boundary of what
is now the defendant's lot, with a gate in it through which the
way is used for the purpose of passing back and forth between
the defendant's land and Essex Street.

From 1866 to 1883 the plaintiff's and defendant's land and
lot C were owned by Elizabeth Hodges, and while she owned

the three lots she continued to use the way in connection with the defendant's land. On her death in 1883 her real estate was sold by public auction, and her heirs, one acting by a guardian, on October 8, 1883, conveyed each of the three lots to three different persons. Lot A was conveyed to the plaintiff, the westerly boundary in the deed being " then turning and running northerly on a courtway two hundred and twenty-one feet to Essex Street," and the description ends as follows: " with all the rights in common on said court, it being the estate conveyed to Joseph Hodges by deed," etc. The easterly boundary of lot C in the deed made by the heirs to one Odell, who conveyed it to Jones, the present owner, is, " thence turning and running southerly on a courtway one hundred and twenty-seven feet and nine inches, with all the rights in common on said court." The westerly and northerly boundaries of lot B made by the heirs to the defendant were, " beginning at the southwesterly corner thereof, thence running northerly by land of Ward, and land now or formerly of Forrester, about three hundred and thirty-seven feet, to a way leading to Essex Street; then running easterly fifty-two feet by said way and land of Hodges "; and the description ends with " being the same premises conveyed to Elizabeth Hodges by James A. Farless et al. by deed." In the habendum of each of the deeds were the words " to have and to hold with all the privileges and appurtenances."

The defendant entered into possession under his deed, and continued to use the way for the purpose of passing from his land to Essex Street, until the plaintiff, who contended that the way had been discontinued, placed a lock on the gate, and prevented the defendant from further using the way. The defendant then, claiming a right in the way, removed the fence, which is the trespass alleged.

The judge ordered judgment for the defendant; and the plaintiff appealed to this court.

*H. P. Moulton*, for the plaintiff.

*J. M. Raymond*, for the defendant.

FIELD, C. J. We understand, from the agreed statement of facts, that the way was well defined by boundaries; that it had been used in connection with all the lands hereinafter described since 1669; and that for more than forty years a fence had been maintained across the way at the northerly boundary of what is

now the defendant's lot, with a gate in this fence through which the way was used for the purpose of passing to and from Essex Street from and to the defendant's lot. From 1866 to 1883 the plaintiff's land, the defendant's land, and lot C were owned by Elizabeth Hodges. She might have discontinued the way except so far as the owners of lot D, which is north of lot C, had rights in it, but it is agreed that, while she owned the three lots, she used the way in connection with the land which now belongs to the defendant. On the death of Elizabeth Hodges her real estate was sold at public auction, and her heirs, one acting by a guardian, conveyed each of the three lots she owned to different persons. The sales and conveyances we understand were made at the same time. Lot A was conveyed to the plaintiff, the westerly boundary in the deed being "then turning and running northerly on a courtway two hundred and twenty-one feet to Essex Street," and the description ends as follows: "with all the rights in common on said court, it being the estate conveyed to Joseph Hodges by deed," etc. The easterly boundary of lot C in the deed made by said heirs to one Odell, who conveyed it to Jones, the present owner, was, "thence turning and running southerly on a courtway one hundred and twenty-seven feet and nine inches, with all the rights in common on said court." The westerly and northerly boundaries of lot B in the deed made by said heirs to the defendant were, "beginning at the southwesterly corner thereof, thence running northerly by land of Ward, and land now or formerly of Forrester, about three hundred and thirty-seven feet, to a way leading to Essex Street; then running easterly fifty-two feet by said way and land of Hodges"; and the description ends with "being the same premises conveyed to Elizabeth Hodges by James A. Farless et al. by deed," etc. This deed did not contain the words "with rights in common on said court," or any similar words. The boundaries and measurements of lots A and C, when applied to the plan, may perhaps be thought to indicate that the fee of the courtway was not intended to be included in the conveyances; but we assume, in favor of the plaintiff, that his deed conveyed the fee to the centre line of the way, with the right to use the whole of the way in common with others. In the habendum of each of the deeds were the words "to have and to hold with all the privileges and appurtenances," etc.

Construing all the deeds together, it seems plain that it was the intention of the grantors that the way should continue to be used by all their grantees in common. The boundary line of the land conveyed to the defendant, running on one side " to a way leading to Essex Street," and then running "by said way," operated to give to him a right to use the way to Essex Street as appurtenant to the land, if the grantors could convey that right, and they plainly could in the present case. *O'Linda* v. *Lothrop*, 21 Pick. 292. *Fox* v. *Union Sugar Refinery*, 109 Mass. 292. *Goss* v. *Calhane*, 113 Mass. 423. See *Geible* v. *Smith*, 146 Penn. St. 276.                         *Judgment affirmed.*