ALFRED L. BOND *vs.* WILLIAM H. ORR & others.

Berkshire.     December 3, 1928. — March 8, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Way*, Private: creation, of necessity. *Easement*, Creation by implication. *Deed*, Construction. *Evidence*, Competency, Of intent.

From findings by a master who heard a suit in equity to enjoin obstruction of a right of way, the following facts appeared: The land of the plaintiff and that of the defendant were one parcel in 1894, when the owner erected a house on the land which the plaintiff afterwards acquired and constructed a way to the house ten feet wide across that portion of the land afterwards acquired by the defendant and in that year by deed conveyed to his son the house and the land on which it stood "with all the privileges and appurtenances thereto belonging"; the deed contained no specific reference to the way. The only practical approach from a public way to the premises thus conveyed was over the premises retained by the grantor. Five years later, one who subsequently purchased the house and land from the son asked the original grantor on the land, "If I buy the place, how about the road?" and was answered, "I built the road and put it there before I built the house and it goes with the house. I built the road to get up to the house; for the house; and to get the lumber up." The way was used openly and continuously by the plaintiff and his predecessors in title from 1894 to 1926. The defendant acquired title to the alleged servient estate in 1912, and in 1926 by

erecting fences at intervals and recording a notice in the registry of deeds, asserted a right to prevent use of the way. *Held*, that

(1) On the foregoing findings, there was an easement of reasonable necessity;

(2) A finding by the master, that "No evidence was introduced to show that no other way or approach to plaintiff's land could have been constructed at reasonable cost," was not intended by him to destroy the effect of his previous finding that the way was the only practicable approach to the land, and was not in effect a finding that the original grantee could have built a way from the public way at a cost which was not prohibitive;

(3) The grant by the common grantor to his son of the specific parcel, described by metes and bounds, with all the privileges and appurtenances thereto belonging, carried by implication, as a *quasi* easement, the way in question;

(4) The declaration of the original grantor on the land then of the son, made five years after his grant to one who afterwards purchased the land of the son, in substance, that the roadway was built for and went with the house, was admissible in evidence to show the intent of the parties;

(5) Testimony of the plaintiff, received against the objection of the defendants, to the effect that his father had told him that the original grantor had said to the father "that no deed of the roadway was necessary but he would give one if thought necessary," was admissible for the same purpose.

BILL IN EQUITY, filed in the Superior Court on June 25, 1927, and described in the opinion. The eighteenth exception by the defendants to the master's report was as follows: "The defendants object to the report and the findings on the evidence stated that there was no interruption of the use of the way under a claim of right from 1894 to 1926 because upon the evidence there was an interruption to the use of said way under a claim of right in 1913 when the plaintiff and the defendant Orr had a heated conversation on the alleged right of way as stated in the master's report."

By order of *Burns*, J., the interlocutory and the final decrees quoted in the opinion were entered. Both parties appealed, as stated in the opinion.

The case was submitted on briefs.

*H. P. Drysdale*, for the plaintiff.

*M. E. Couch & E. D. Getman*, for the defendants.

PIERCE, J.   This is a bill in equity asking for a restraining order which shall perpetually enjoin the defendants, their servants, agents, and assigns from obstructing, interrupting,

or in any manner interfering with the use of the way described in the third paragraph of the bill of complaint. Upon completion of the pleadings the case was sent to a master under the usual rule and he duly made report. The defendant brought in eighteen objections to the master's report, which are appended to the report. Equity Rule 26 (1926). On motion of the plaintiff that the objections and exceptions be overruled, the trial judge entered the following interlocutory decree: ". . . it is ordered, adjudged and decreed, that the respondents' exceptions numbered First to Seventeenth inclusive be and are hereby overruled, and their exception number Eighteenth be and is hereby sustained, and that the master's report, save as thus modified, be and is hereby confirmed." On the same day a final decree was entered in the terms which follow: "This cause came on to be heard at this sitting and was argued by counsel; and thereupon consideration thereof, it was ordered, adjudged and decreed that the respondents, their servants, agents, heirs and assigns be and they are hereby perpetually enjoined from obstructing, interrupting or in any manner interfering with the use of a way about ten feet in width leading southwesterly from State Street in North Adams in said county over lands of the respondents to lands of the petitioner as a means of ingress and egress to the petitioner's said land. It is further ordered, adjudged and decreed that the petitioner be and he is hereby awarded costs, taxed as at law, in the sum of $47.25." The case is before us on the defendants' appeal from the interlocutory and final decrees, and on the plaintiff's appeal from so much of the interlocutory decree as sustains the eighteenth exception.

The lands of the plaintiff and defendants lie on the westerly side of State Street in North Adams, and adjoin each other. In 1894, James H. Flagg, who was then the owner of the lands of the parties hereto, erected a house on the land now owned by the plaintiff and constructed a passageway ten feet wide, southwesterly over his land, from State Street to the house. In October, 1894, he conveyed to his son Edward E. Flagg, "with all the privileges and appurtenances thereto belonging," the portion of the land upon which he

had built the house and to which he had constructed the roadway. The deed makes no mention of the way. The land thus conveyed was bounded on the east by State Street, on the south by land of one Ballou, on the west by land now or formerly of one Hodskin, and on the north by the remaining lands of James H. Flagg. In area it was seventy-five feet wide by one hundred sixty-four feet long, and is on a steep side hill which slopes toward the east at a sharp grade, and at its easterly end is on a high bank above the level of State Street. From a view taken at the hearing the master describes the way as follows: "over the land conveyed by Helen Flagg Pierce and Ellen E. Pierce to Austin Bond [on April 21, 1903] a road runs from a barn at the westerly end of the land easterly down grade to the road over the alleged servient estate; from said road first referred to another road runs southerly easterly and northerly around the house on the plaintiff's land, that which extends northerly joining the road on the alleged servient estate." "The road is in plain view from State Street for its entire course across the Flagg land and in plain view from the residence which was occupied by the elder Flagg and his successors in title, excepting the North Adams Savings Bank which held title from January 22, to March 20, 1912."

The master finds that the only practicable approach from State Street to the premises of the plaintiff is the way over the alleged servient estate; that there has never been any road to the Bond land except the way in question, and its location is today and always has been where it was originally constructed. He further finds that "the road was of value to the estate conveyed by the elder Flagg to his son; it was fit and proper as a means of access to the property as it existed at the time of the conveyance; it was actually constructed over the alleged servient estate prior to the conveyance from father to son; and may fairly be presumed to have been taken into consideration by Edward E. Flagg in making his purchase of the property. It may fairly be inferred that it was the intention and understanding of both father and son that the right to use the road should pass as appurtenant to the grant." And the master states that he makes

"that inference." The report recites that "No evidence was introduced to show that no other way or approach to plaintiff's land could have been constructed at reasonable cost."

After the deed to Edward E. Flagg, the grantee occupied the premises and used the road until September 13, 1899, when he conveyed the premises to Austin Bond. Before buying this property, Bond, with the plaintiff, met James H. Flagg on the premises of Edward E. Flagg. The party looked over the grounds and buildings. Austin Bond asked James H. Flagg about the road from the place across the elder Flagg's land to State Street, saying, "If I buy the place, how about the road?" To this Flagg replied: "I built the road and put it there before I built the house and it goes with the house. I built the road to get up to the house; for the house; and to get the lumber up." Subject to the objection of the defendants, the plaintiff was permitted to testify that just after the delivery of the deed to Austin Bond, Bond told the witness that the elder Flagg had told him, Austin Bond, that no deed of the roadway was necessary but he would give one if it were thought necessary. The master states that "If the evidence was rightly admitted, I find the facts to be as testified to. This finding, however, has in no way influenced me in making any other finding in this report." The master further finds that such a deed was prepared at the instance of Bond, but immediately after the transfer of title by Edward E. Flagg to Austin Bond the elder Flagg was taken critically ill and died four days later; that no deed of the right of way was ever executed. No repairs have been made on the road by any one other than the plaintiff and his predecessors in title, and the plaintiff has made substantial repairs thereon from time to time.

The use of the road by Edward E. Flagg and his successors in title was open and continuous from 1894 until August 24, 1926. On the day last named, William H. Orr, who had acquired title to the alleged servient estate on March 20, 1912, built a fence across the way, which the plaintiff removed; Orr then obstructed the way by parking a large truck across it, and he told the plaintiff that he intended to keep blocking the way at intervals. He later recorded a

notice in the registry of deeds in accordance with the statutory provision respecting disputed rights of way. In the spring or summer of 1913, the plaintiff and Orr had "a short heated talk" on the road, the substance of which follows: "Orr asked Bond if he owned the driveway. Bond replied that he did; that it was 'put there for the house and we owned it. It was the only way of getting up there' . . . . Orr asserted that he owned the way; that he had a warranty deed of his property free from all encumbrances; and said that if Bond insisted on his right, he . . . would close the road up." Upon these findings the master made the inference that it was the intention and understanding of both father and son that the right to use the road should pass as appurtenant to the grant to the son.

Upon these findings there was an easement of reasonable necessity. The finding of the master, that "No evidence was introduced to show that no other way or approach to plaintiff's land could have been constructed at reasonable cost," manifestly was not intended by him to destroy the effect of his previous finding that the way was the only practicable approach to the land, and clearly does not go so far as to be a finding that the original grantee could have built a way from State Street at a cost which was not prohibitive. The case falls within *Pettingill* v. *Porter*, 8 Allen, 1, 6, 7. *Gorton-Pew Fisheries Co.* v. *Tolman*, 210 Mass. 402, 410, 411 and *Davis* v. *Sikes*, 254 Mass. 540, 546. Upon the division or severance of the land owned by James H. Flagg in 1894, the grant of the specific piece to Edward E. Flagg, described by metes and bounds, with all the privileges and appurtenances thereto belonging, carried by implication, as a *quasi* easement, the way constructed by the grantor while building the house on the land subsequently conveyed by him to his son. *Gorton-Pew Fisheries Co.* v. *Tolman*, *supra*. *Raynes* v. *Stevens*, 219 Mass. 556, 558. *Orpin* v. *Morrison*, 230 Mass. 529. *Churchill* v. *Harris*, 257 Mass. 499, 502.

The declaration of the grantor on the land of the son, made five years after his grant, to a prospective purchaser of the son's land, in substance, that the roadway was built

for and goes with the house; and the testimony of the plaintiff, received against the objection of the defendants, to the effect that the father of the plaintiff had told him that James E. Flagg had said to the plaintiff's father "that no deed of the roadway was necessary but he would give one if thought necessary," were admissible in evidence to show the intent of the parties.

It results that as matter of law the plaintiff has a title to an easement of way over the land of the defendants which has been acquired through an implication of a grant contained in the deed to Edward E. Flagg.   It further results that the final decree must be affirmed with costs.

*Ordered accordingly.*