MYER G. JASPER *vs.* WORCESTER SPINNING & FINISHING CO.

Worcester.    September 24, 1945. — December 3, 1945.

Present: FIELD, C.J., QUA, RONAN, WILKINS, & SPALDING, JJ.

*Easement. Deed,* Construction. *Evidence,* Competency, Extrinsic affecting writing, Of intent. *Land Court,* Exceptions: general exception, whether error harmful; Decree. *Error,* Whether error harmful.

The obvious physical situation and use of a canal carrying water for industrial use from a pond on the upper of two mill properties in common ownership to the lower property, and a plan, and statements in a catalogue and made by the auctioneer at an auction when the properties were sold to different grantees in severance of the title, were such that findings were warranted that, although the deeds contained no warranties or mention of water rights, the respective grantees knew what they were buying, and that it was the intention of the parties that such water rights in the upper property should exist for the benefit of the lower property; so that by implication the conveyances created such an easement in favor of the lower property and subjected the upper property thereto.

Neither the fact that deeds of two lots in common ownership to different grantees were simultaneous, nor the fact that they were deeds by a trustee in bankruptcy in his official capacity, prevented the implication of an easement in one of the lots for the benefit of the other; such facts were merely circumstances to be considered in ascertaining the intention of the parties.

Statements in a catalogue, issued by the owner of two lots of land preliminary to their sale at auction, concerning water rights in one of the lots for the benefit of the other, a plan included in the catalogue, and statements on the subject of such rights made by the auctioneer at the sale were admissible at the hearing of a petition in the Land Court for registration of the title to one of the lots with such rights, although conveyances of the lots to different grantees following the

sale were made by deeds without warranties or mention of such rights; but they were admissible only for the limited purpose of showing facts within the knowledge of the parties to the conveyances respecting the subject matter thereof in order to determine and effectuate their intention as to such rights.

A general exception to the admission of evidence, admissible for a limited purpose only, must be overruled if the excepting party at the trial did not request that the use of the evidence be so limited.

In view of all the evidence and the character of findings by the trial judge at the hearing of a petition in the Land Court for registration of the title to land, where an issue was whether the petitioner was entitled to certain water rights by implication from the circumstances in which a predecessor had received his title by a deed containing no warranty or mention of such rights, error in the admission in evidence of statements as to such rights by the predecessor was harmless, and an exception thereto was overruled.

Evidence did not require a finding that a right, arising by implication from the circumstances of a conveyance of land, to beneficial use for that land of a flowage of water for mill purposes from ponds on other land, had ceased because such flowage was no longer a reasonable necessity due to the fact that at times and to some extent the owner of that right had used water from a public water supply system.

In a decree of the Land Court giving the petitioner a right to enter upon the land of the respondent "for the purpose of maintaining, repairing, relaying or reconstructing" pipes included in a water supply system thereon from which the petitioner was adjudged to have an easement to draw water, the words "relaying and constructing" meant only that the petitioner was authorized to reconstruct such parts of the pipes as in the course of time should have become incapable of further repair by laying new pipe of no greater size in the same locations; and so construed the decree gave the petitioner no more than a right of relaying and reconstruction incidental to his easement and did not surcharge it.

PETITION, filed in the Land Court on April 9, 1943.

The case was heard by *Courtney, J.*

*J. A. Crotty,* for the respondent.

*H. W. Cowee,* (*S. G. Friedman* with him,) for the petitioner.

RONAN, J. This is a petition to register the title to a parcel of land in Leicester, including as appurtenant thereto an easement to use and enjoy a supply of water upon the premises of the respondent and to maintain a conduit for the flow of said water to the land of the petitioner. The judge of the Land Court ruled that the petitioner was entitled to a decree of registration of the title to the locus

together with the said easement. The case is here upon exceptions of the respondent to the denial of certain requests and to the admission of evidence.

The petitioner's property, known as Chapel mill, hereinafter referred to as the Chapel lot, is located on the northerly side of Main Street and the easterly side of Chapel Street. The premises consist of a group of buildings which were designed and constructed for the manufacturing of woolens and for similar uses. This mill, which has been in substantially continuous operation since 1868, has used considerable quantities of water which it secured from Kettle Brook by means of a canal into which water was discharged from a small pond raised by a dam across this brook. Later this canal was fed by pipes which ran to a mill pond, and finally in 1940 a four inch pipe was placed in the canal and the canal was filled in. The respondent owns the Brick City mill, hereinafter referred to as the Brick City lot. Kettle Brook runs through the Brick City lot, and a supply from this brook over this lot is reasonably necessary for the beneficial enjoyment of the Chapel lot.

The Chapel Mills Manufacturing Co. in 1903 acquired title to both lots, together with other parcels of land, forming a contiguous tract of land on both sides of Chapel Street and extending westerly to Kettle Brook. The Brick City lot consisted of several mill buildings, the small pond and the mill pond already mentioned. The canal ran southerly from the Brick City lot to the Chapel lot and for about two hundred feet was located on the Brick City lot, and then passed under Chapel Street and continued for about seven hundred feet on the Chapel lot. This canal, which served as both a reservoir and a conduit, was six or eight feet wide and its depth varied from one to four feet. The flow of water in this canal was controlled by a gate at the small pond on the Brick City lot. Later the small pond and the spillway from the mill dam which emptied into the small pond were by-passed by a flume, and two pipes led to the Brick City mill. The flume was replaced in 1923 by a twelve inch pipe. A six inch branch from this pipe ran along the westerly wall of the mill building on the

Brick City lot and discharged into the canal, and a four inch branch from this pipe supplied the condenser and certain water using machines in the Brick City mill and then conveyed the water into the canal. A baffle board separated the grease and oil from this water in the canal and permitted the clear water to flow down the canal to be used by the mills on the Chapel lot. Both mills were owned and operated by the Chapel Mills Manufacturing Co. from 1903 until they were sold in 1923 to the Channing Smith Textile Corporation, which continued the operation of both until late in 1930 shortly before it became a bankrupt. The water supply system which has been described "linked the two mills with a unified water system to serve the varying needs of both under the general supervision of one master mechanic." During the period of common ownership of both mills, the Chapel mill secured a continuous supply of water from the canal.

The trustee in bankruptcy of the Channing Smith Textile Corporation sold thirty-five parcels of real estate and numerous lots of machinery and personal property separate from the real estate at public auction in June, 1931. An elaborate catalogue of the real and personal property including a plan showing the location of all these parcels was prepared and distributed to the bidders. The first parcel described in this catalogue was the Brick City lot which, it was stated in the catalogue, was to be sold subject to certain described water rights in favor of parcel numbered 2, which was the Chapel lot. After describing the Chapel lot, the catalogue stated in a note that "Included with this parcel is the right to maintain the canal leading from Parcel No. 1 to Parcel No. 2 as it at present exists, together with the right to the flowage of water through the canal and the right of access to that portion of the said canal which lies within the bounds of the said Parcel No. 1 for purposes of operation, maintenance and repair." The Brick City lot was sold to Lowis and Zelkind, and a few minutes later the Chapel lot was sold to one Krock. The deeds to both lots were dated and approved by the referee in bankruptcy on July 14, 1931. The deeds contained no warranties, and

conveyed whatever right, title, and interest the bankrupt had at the commencement of the proceedings in bankruptcy in the parcels conveyed, which were described by metes and bounds. No mention was made of any water rights in either deed.

The owner of a parcel of land may lay out or instal over or in a part of his land a way, water pipe, drain, sewer or other physical arrangement or structure for the benefit of another part of the land, and the use and enjoyment of this quasi easement while there is unity of possession and title in the entire parcel will not create any real or actual easement, *Ritger* v. *Parker*, 8 Cush. 145; *Rogers* v. *Powers*, 204 Mass. 257, 262; *York Realty, Inc.* v. *Williams*, 315 Mass. 287, 289, but upon a severance of title, in the absence of anything to the contrary in the instrument of conveyance, a conveyance of the dominant estate will carry with it an implied grant of the easement for the benefit of the land conveyed, and a conveyance of the servient estate will create the easement by an implied reservation for the benefit of the land retained, if the language of the instruments of conveyance read in the circumstances attending their execution, including the physical situation and characteristics of the land and the knowledge which the parties had or with which they were chargeable, leads to the conclusion that such an implied easement, by grant or reservation, as the case may be, must have been within the presumed intention of the parties. *Atkins* v. *Bordman*, 2 Met. 457, 464. *Gorton-Pew Fisheries Co.* v. *Tolman*, 210 Mass. 402, 410. *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.* 284 Mass. 100, 105–106.

The fact that a severance of title is effected by simultaneous instruments of conveyance does not prevent the implication of an easement, but is a circumstance that must be considered in ascertaining the intention of the parties. *Buss* v. *Dyer*, 125 Mass. 287. *Lefavour* v. *McNulty*, 158 Mass. 413. *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.* 284 Mass. 100. We do not think that the doctrine of implied easement is to be restricted in its application on account of the fact that the grantor is a trustee

in bankruptcy, although the official capacity in which the grantor acted is a factor that must be regarded with the others in determining the effect to be given to the grant. *Russell* v. *Jackson*, 2 Pick. 574, 578. *Schmidt* v. *Quinn*, 136 Mass. 575, 576. *Davis* v. *Sikes*, 254 Mass. 540. The judge found that, whether the transfer of the Brick City lot preceded the transfer of the Chapel lot or whether these transfers were contemporaneous, an easement by implication arose in favor of the Chapel lot.

In this aspect of the case, further findings of the judge must be considered. The entire course of the canal was apparent and obvious. It ran from a source of a water supply located upon the Brick City lot to the Chapel lot. So far as appears, no other manufacturing plant was situated upon the banks of this canal. Its location indicated that it was for the exclusive use and enjoyment of the Chapel lot. The canal was dry at the time of the public auction by the trustee in bankruptcy, but the mills on both lots had not been in operation for some months previously, the valves in the pipe lines upon the Brick City lot feeding this canal had been closed, and the condition of the canal was similar to the condition generally prevailing at both mills and amounted to no more than the usual condition resulting from temporary disuse of manufacturing plants. The piping at the Brick City lot connecting the mill pond with the canal was readily observable by anyone interested enough to make a cursory examination. Indeed, the purpose of an artificial canal as distinguished from a natural water course running to a woolen mill could hardly have been misunderstood. The physical situation of the canal, its appearance as to age, its relation to both lots, and the nature of the business which had been carried on on both lots and for which these premises were adapted and designed and which required large quantities of water, reasonably lead to the conclusion that the canal had been excavated and maintained for the benefit of the Chapel lot. Regard too must be had to the statements and the plan contained in the catalogue, and to the announcement made by the auctioneer based upon those statements, in so far

as they pertained to the physical. characteristics of. the properties and thereby aided in ascertaining the intent of the parties in making the conveyances of the two lots. The judge warrantably found that the purchasers knew what they were buying, and that certain water rights in the Brick City lot existed for the benefit of the Chapel lot. These findings of fact are supported by the evidence and cannot be disturbed. *Hartt.*v. *Rueter,* 223 Mass. 207, 212. *Holmes* v. *Barrett,* 269 Mass. 497, 499. *Sutcliffe* v. *Burns,* 294 Mass. 126, 132.

The respondent excepted to the admission of certain pages of the catalogue describing the two lots in question together with the notations concerning the water rights, to the plan included in the catalogue, and to the statements of the auctioneer. Where the description of the premises in a deed is clear and explicit, parol evidence is not admissible to contradict, control or modify the description or to show that the parties intended something different from that expressed in the deed. *Cook* v. *Babcock,* 7 Cush. 526. *Hirsch* v. *Fisher,* 278 Mass. 492, 495. *Supraner* v. *Citizens Savings Bank,* 303 Mass. 460, 463. And the statements made by an auctioneer describing the land he is selling come within the rule. *Oliver* v. *Pitman,* 98 Mass. 46. *Bentley* v. *Mills,* 174 Mass. 469. But whether the deed to the Chapel lot carried with it by implication an easement over the Brick City lot did not depend entirely upon the construction of the language of the deed, but the deed was to be construed with reference to all the facts within the knowledge of the parties in reference to the subject matter of the grant in order to determine and effectuate the presumed intention of the parties. It was open to the petitioner to show that an implied easement was embraced in the conveyance. *Gorton-Pew Fisheries Co.* v. *Tolman,* 210 Mass. 402, 410. *Orpin* v. *Morrison,* 230 Mass. 529, 533.

The declaration of a grantor made before the delivery of a deed, that he did or did not intend to convey an easement, is not competent on that issue. *Cook* v. *Babcock,* 7 Cush. 526. *Queenin* v. *Blank,*.268 Mass. 432, 435. Compare *Bond* v. *Orr,* 266 Mass. 475, 481. In *Parker* v. *Bennett,*

11 Allen, 388, it was held that the declaration of a grantor was not admissible to prove that he intended to include a right of passage in a way, but it was said, at page 391, that "So far as the parol evidence tended to show the existing condition of the property at the time of the grant to Pickering [the plaintiff's grantor], and thus aided in the construction of that grant by showing to what subject matter it applied, it was competent and material; but only to that extent." It was stated in *Washburn & Moen Manuf. Co.* v. *Salisbury,* 152 Mass. 346, 351, that "The doctrine under which easements are held to be created by an implied grant rests upon the principle, that the intention of the grantor is to be discovered by an application of the language of his grant to the subject matter to which it relates." It was necessary for the petitioner to prove that the purchasers of the Brick City lot at the auction knew or were chargeable with knowledge of all pertinent facts relative to the existence of the canal and its necessity for the use and enjoyment of the Chapel lot. The fact that such knowledge was given is the thing that is important rather than the means by which it is imparted. No implied easement could be created against them in the absence of such knowledge. *Gorton-Pew Fisheries Co.* v. *Tolman,* 210 Mass. 402, 411. *Raynes* v. *Stevens,* 219 Mass. 556, 557. *Dale* v. *Bedal,* 305 Mass. 102, 104.

The evidence in question being admissible for the limited purposes mentioned, a general exception to its introduction without requesting that it be limited to the particular purposes for which it was competent is not to be sustained. *Leonard* v. *Boston Elevated Railway,* 234 Mass. 480, 483. *Irwin* v. *Worcester Paper Box Co.* 246 Mass. 453, 456. *Curtin* v. *Benjamin,* 305 Mass. 489, 493. *Moran* v. *School Committee of Littleton,* 317 Mass. 591, 595.

The statements of Krock, the purchaser of the Chapel lot at the auction sale, to a representative of the Valley Mills, Inc., shortly before that company purchased this lot in 1932 and to the petitioner before he purchased the' lot in 1937, to the effect that he had water rights over the land of the respondent, were merely his own view of what his

rights were and should have been excluded. The same is true of the testimony of the petitioner that Krock made such a statement to him. But it does not seem likely, in view of all the evidence in this case, that the rights of the respondent were injuriously affected by these self-serving statements of Krock. The findings of the judge show that he placed considerable stress upon the catalogue and the announcements of the auctioneer, but there are no findings concerning these statements of Krock. All the deeds in the chain of title to the respondent from Lowis and Zelkind, the purchasers of the Brick City lot at the auction, with the exception of one deed, recited that this lot was conveyed subject to "flowage rights." Furthermore, the deeds from Krock to the Valley Mills, Inc., and to the petitioner were introduced in evidence without objection. Both deeds expressly included water rights of the grantor. The admission of these statements of Krock, while technically erroneous, does not constitute reversible error in the absence of a showing by the respondent that it is reasonably probable that it had been harmed by the error. *Bendett* v. *Bendett*, 315 Mass. 59, 65–66. *Commonwealth* v. *Rubin*, *ante*, 587, 592.

There was evidence that for fifteen years before the auction the Chapel lot had a supply of water from a main of a water company with which it was connected with a three-fourths inch pipe. It is urged by the respondent that, if an easement to secure water from the canal existed in favor of the Chapel lot, the easement terminated when the necessity for its continuance ceased upon water becoming available from this main. But can it be said that the parties contemplated that the use of the canal by the owners of the Chapel lot should cease when a supply became available from one of the street mains? The mills on the Chapel lot had used the water from the street main for drinking purposes and for the sprinkler system, but they did not use the water from the main for manufacturing purposes except when the supply in the canal was inadequate or too dirty to use in the manufacturing process. In a general way water from the mains was used only in the same way as

on the Brick City lot. It is significant that they did not abandon their private supply when water from the street mains became available. A cheap and inexpensive supply of water was reasonably necessary for the practical operation of the mills on each lot. It is not unlikely that a private supply of water might enhance the value of these two lots and that it was not intended that this private water supply should be superseded by a supply from the street mains or that the grantee of the Chapel lot should go to the expense of purchasing water from the company owning the mains. We do not think that a supply of water from the canal ceased to be a reasonable necessity for the beneficial enjoyment of the Chapel lot or that the parties intended that it should cease merely because a supply might be obtained from the main. Am. Law Inst. Restatement: Property, § 476.

The judge ruled that the petitioner was entitled to a decree giving him the right to draw water through the pipe which had been installed in the location of the old canal and which had superseded the canal as a conduit for the conveyance of the water to the petitioner's premises, together with the right to enter upon the land of the respondent "for the purpose of maintaining, repairing, relaying and reconstructing" this pipe and the other pipes included in this water supply system. The respondent contends that the petitioner is not entitled to relay or reconstruct the pipes. The petitioner was entitled to a flow of water from a source upon the respondent's land, and he had a right to enter upon the respondent's land for the purposes of making repairs and of doing in a reasonable manner such things as were necessary to secure a continuance of this flow of water. *Prescott* v. *White*, 21 Pick. 341. *Willard* v. *Stone*, 253 Mass. 555. *Guillet* v. *Livernois*, 297 Mass. 337. *Mt. Holyoke Realty Corp.* v. *Holyoke Realty Corp.* 298 Mass. 513. *Van Buskirk* v. *Diamond*, 316 Mass. 453. The words "relaying and reconstructing" must be construed with the context in which they appear. We think they go no farther than to authorize the petitioner to reconstruct all or such parts of the pipes which in the course of time have become in-

capable of further repair by substituting new pipe for the old, and to lay down or relay the new pipe in the same location as that of the pipe that it replaces.  The ruling does not give the petitioner any right to change the location of the pipes or to increase their size, and limits the petitioner to such rights as are reasonably incidental to the full enjoyment of the easement.  The exercise of such rights in a reasonable manner will not surcharge the easement or wrongfully injure the respondent's land, as was the case in *Cary* v. *Daniels,* 8 Met. 466, *Jennison* v. *Walker,* 11 Gray, 423, *Killion* v. *Kelley,* 120 Mass. 47, *Chandler* v. *Jamaica Pond Aqueduct Corp.* 125 Mass. 544, *Marsh* v. *Haverhill Aqueduct Co.* 134 Mass. 106, *Gray* v. *Cambridge,* 189 Mass. 405, *Draper* v. *Varnerin,* 220 Mass. 67, *Pease* v. *Parsons,* 259 Mass. 86, and *Hewitt* v. *Perry,* 309 Mass. 100.

*Exceptions overruled.*